**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| VICKI NIHART,<br><br>             Plaintiff,<br><br>v.<br><br>NATIONAL PARK SERVICE, *et al.*,<br><br>             Defendants. | Case No. 2:12-cv-00291-APG-GWF<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

### Findings of Fact

1. At the time of the incident involved in this case, plaintiff Vicki Nihart was a citizen and resident of Clark County, Nevada. She is now a citizen and resident of Texas.

2. The United States installed and owns a low-water boat launch ramp at Callville Bay, which is part of the Lake Mead National Recreation Area, an area under the jurisdiction of the National Park Service ("NPS").

3. Due to low-water conditions at Lake Mead, the low water ramp was in use by boaters on August 15, 2010.

4. The low-water boat launch area at Callville Bay includes a relatively flat area for preparing boats for launch (the Prep Area), a sloped ramp area (the Ramp) from which boats are launched, and an adjacent sidewalk (the Sidewalk) for use by pedestrians walking from the Prep Area to the water and floating dock.

5. The Ramp has grooved concrete pavement to ensure good traction by vehicles. The Ramp also has a few depressions in its concrete surface approximately 18 inches in diameter and 4 inches deep. The depressions are located approximately in the middle of the width of the Ramp. Installed in these depressions are metal dock anchors, which can be used to hold the steel cable that is attached to and secures a floating dock, which is adjacent to the area where boats enter the water. The dock anchors are necessary features of the Ramp's design and construction.

Each anchor is a 5/8" steel loop approximately 3 inches above the surface of the depression. There are no visible warnings posted at or about the anchor depressions.

6. On August 15, 2010, Ms. Nihart drove to the Callville Bay low-water boat launch area with friends to boat on Lake Mead. She had been to the same boat launch area with the same friends and boat the previous day.

7. Ms. Nihart was wearing foam flip-flops on her feet on August 15. She had a cast on her right hand and arm due to a prior accident.

8. On August 15, after her group arrived at the Prep Area, Ms. Nihart got into the driver's seat of the truck that was pulling the boat trailer and drove it gradually down the Ramp toward the water as the other people in her group prepared the boat for launching.

9. As their truck and trailer neared the water, Ms. Nihart asked her friend Jack to take over driving as she was uncomfortable turning the truck and trailer around and backing it into the water. Ms. Nihart exited the truck, walked up the Ramp a few feet to the boat on the trailer, and retrieved some items. She then walked back down the Ramp a few feet toward the truck cab.

10. Before she reached the truck cab, Ms. Nihart's left foot caught on one of the dock anchor depressions and she tripped and fell on the Ramp. Ms. Nihart tumbled several feet down the Ramp. She injured her knees and received bruises and lacerations on her hands, wrists and feet.

11. Ms. Nihart was treated on the scene by park rangers, and then she was taken by her friends to St. Rose Hospital in Henderson, Nevada. She received stiches in her left knee and a walking cast for her left leg.

12. Ms. Nihart had a lifelong condition known as hammer-toe in both her left and right feet. This condition was not caused by her accident on the Ramp.

13. Two weeks after the accident, Ms. Nihart saw Dr. Russell Yee, an orthopedic surgeon, regarding her knees. While she was in Dr. Yee's office, she also met with Dr. Thomman Kuruvilla, a podiatrist. Dr. Kuruvilla ordered an MRI of Ms. Nihart's feet. The MRI showed no

significant injuries to her feet. Nevertheless, Dr. Kuruvilla believed Ms. Nihart had suffered a torn tendon in her left foot. Therefore, he recommended surgery on her left foot.

14. Ms. Nihart underwent surgery on September 22, 2010. During that surgery, Dr. Kuruvilla repaired the torn tendon in her left foot, and repaired her left foot hammertoe. Dr. Kuruvilla testified that it was necessary to repair the left foot hammertoe so it would not cause the repaired tendon to rupture. He also testified that the gastrocnemious procedure he performed during that surgery (at a cost of $2,015, per Exh. 7, p. USO1232) was not directly related to the tendon injury.

15. On November 24, 2010, Ms. Nihart underwent surgery to repair the hammertoe condition on her right foot.

16. The medical expenses incurred to correct the torn tendon and the left foot hammertoe were related to the accident. The medical expenses incurred for the gastrocnemious procedure and to correct the right foot hammertoe were not related to the accident.

17. Ms. Nihart is now fully recovered from the accident and is not seeking future medical expenses or other future damages resulting from the accident.

18. As a result of Ms. Nihart's trip and fall she missed 23 days of work and sustained lost earnings of $4,154.00.

19. As a result of Ms. Nihart's trip and fall, she suffered total medical specials in the amount of $56,682.00.

20. A reasonable amount to compensate Ms. Nihart for her pain and suffering is $15,000.00

21. Ms. Nihart presented an administrative claim pursuant to 28 U.S.C. § 2675, and the government denied the claim.

22. Pedestrian use of the Callville Bay boat launch Ramp was reasonably foreseeable at the time of design and construction.

23. Ms. Nihart's use of the Callville Bay boat launch Ramp was foreseeable by NPS. Other pedestrians used the Ramp (and similar boat launch ramps owned or operated by NPS) in

the same manner that Ms. Nihart used it. NPS knew or should have known that pedestrians used the Ramp as Ms. Nihart used it. It also was reasonably foreseeable to NPS that pedestrians would wear flip-flops on the Ramp.

24. Cost-effective measures were available to NPS to reduce the hazard presented by the anchor depression Ms. Nihart tripped and fell over, including bright paint, caps, temporary filler, or cones. However, none of those measures would have eliminated the danger presented by the hazard. Pedestrians like Ms. Nihart must exercise reasonable care when using and walking on the Ramp.

25. The United States failed to exercise reasonable care in the design or construction of the Ramp, and Ms. Nihart failed to exercise reasonable care for her own safety. Their respective shares of negligence were:

United States:  51%

Ms. Nihart:    49%

## Conclusions of Law

1. Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1346(b).

2. Venue over this action is proper in the District of Nevada pursuant to 28 U.S.C. § 1291(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

3. Under the Federal Tort Claims Act, the governing law for cases such as this is "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). In this case, that is Nevada substantive tort law.

4. To prevail on a traditional negligence theory, a plaintiff must demonstrate that "(1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, (3) the breach was the legal cause of the plaintiff's injuries, and (4) the plaintiff suffered damages." *Foster v. Costco Wholesale Corp.,* 291 P.3d 150, 153 (Nev. 2012) (citation omitted).

5. A landowner bears a general duty of reasonable care to all entrants, regardless of the open and obvious nature of dangerous conditions. *Foster v. Costco Wholesale Corp.,* 291 P.3d 150, 156 (Nev. 2012).

6. A landowner should evaluate whether an invitee might be distracted from observing or avoiding a dangerous condition. *Id.*

7. The United States shall be liable in the same manner and to the same extent as a private individual under like circumstances. 28 U.S.C. § 26.74.

8. The United States breached the duty of care it owed to Vicki Nihart when it failed to reduce the hazardous condition and danger presented by the anchor depression.

9. As a direct and proximate result of the United States' breach, Ms. Nihart suffered injuries.

10. As a direct and proximate result of the United States' breach, Ms. Nihart missed work and suffered lost wages.

11. Ms. Nihart lived with pain and limitations after the accident.

12. Nevada applies a statutory rule of comparative negligence under NRS 41.141, which states:

> 1. In any action to recover damages for death or injury to persons or for injury to property in which comparative negligence is asserted as a defense, the comparative negligence of the plaintiff or the plaintiff's decedent does not bar a recovery if that negligence was not greater than the negligence or gross negligence of the parties to the action against whom recovery is sought.
>
> 2. In those cases, the judge shall instruct the jury that:
>
>    (a) The plaintiff may not recover if the plaintiff's comparative negligence or that of the plaintiff's decedent is greater than the negligence of the defendant or the combined negligence of multiple defendants.
>
>    (b) If the jury determines the plaintiff is entitled to recover, it shall return:
>
>       (1) By general verdict the total amount of damages the plaintiff would be entitled to recover without regard to the plaintiff's comparative negligence; and
>
>       (2) A special verdict indicating the percentage of negligence attributable to each party remaining in the action.

1  Based on the Findings of Fact above, I conclude that:

2  A. Ms. Nihart has proved a breach of duty by the United States, legal cause, and damages, but the United States has also proved comparative negligence by Ms. Nihart. The parties' respective percentages of fault are:

      United States:    51%

      Plaintiff:    49%

B. Ms. Nihart's total incurred damages, without reduction for her comparative negligence, are $75,836.00. Under NRS 41.141.2, those damages must be reduced by the proportionate share of her comparative negligence, which is 49%, or $37,159.64, leaving recoverable damages of $38,676.36.

ACCORDINGLY, Ms. Nihart is awarded $38,676.36.

Dated: October 20, 2014.

                                ANDREW P. GORDON
                                UNITED STATES DISTRICT JUDGE